400

THE STATE OF WASHINGTON, *Respondent*, v. ALLEN L. WINSTON, *Appellant*.

*In the Matter of the Personal Restraint of* ALLEN L. WINSTON, *Petitioner*.

*Stephanie C. Cunningham*, for appellant/petitioner.

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

¶1 PENOYAR, J. — Allen L. Winston appeals his convictions for violating a protection order, attempted second degree assault, and first degree burglary. He argues that because the jury was never asked to find whether his crimes involved domestic violence, the trial court violated *Blakely*[1] by imposing a domestic violence protection order, ordering a domestic violence evaluation, and imposing a domestic violence fine. He further claims that he received ineffective assistance of counsel, that the evidence was not sufficient, that the trial court did not properly address a jury question, and that the trial court miscalculated his offender score. We affirm the convictions and deny the consolidated personal restraint petition (PRP).

## FACTS

### I. BACKGROUND

¶2 In July 2003, Winston moved into the house his girl friend, Melissa Mattingly, was renting. The couple had been

---

[1] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

dating for several years and had two young children in common. Winston's name was never put on the lease; he did not contribute to the rental or maintenance costs, nor did he own any of the furniture.

¶3 Following an altercation in August 2003, a no-contact order was issued prohibiting Winston from contacting Mattingly or going near her home or work. Despite the order, Mattingly continued to allow Winston to live with her.

¶4 In October 2003, following a heated argument, Mattingly told Winston to leave because she did not want to see him anymore. Mattingly took his keys, and Winston left with his belongings.

¶5 On October 10, Mattingly heard glass breaking and saw Winston crawling in through a bedroom window with help from his cousin. When Mattingly asked what he was doing, Winston responded, "You must have another guy here." 1 Report of Proceedings (RP) at 85. Winston then went to the front door and let in his cousins, Marlon and Bobby Winston.

¶6 Winston started searching the house. He took Mattingly's cell phone and then wrestled her to the floor to try to take her keys from her pocket. Mattingly started screaming and asked Bobby[2] to help, but he said he did not have anything to do with the incident. Marlon left to avoid becoming further involved.

¶7 Mattingly got up and ran into the kitchen, trying to escape to the outside. Winston followed her and shut the door to prevent her from leaving. He then picked up a knife and chased her with it. She asked, "What are you going to do with that?" 1 RP at 90. He responded that he was not going to do anything and put the knife on top of the refrigerator.

---

[2] We use first names where necessary to avoid confusion. We intend no disrespect.

¶8 Winston then took Mattingly into their daughter's bedroom and pinned her on her back by straddling her with his knees on her arms and chest. Mattingly was screaming, and Winston told her to be quiet or the police would come. Mattingly later testified:

> Got strangled a couple times. One time—I remember him stuffing blankets in my mouth where I was close to my throat, I told him I couldn't breathe. He said, "Yeah, you can breathe because you are talking."
>
> I remember just getting strangled and choked and I remember him—I remember him shaking me and telling me, "Please wake up. What's wrong with you," . . . And I remember [him] slapping me a couple times to make sure I was all right and after that, he just said, "I got to go."

1 RP at 94-95. After Winston left, Mattingly called the police.

II. PROCEDURAL HISTORY

¶9 The State charged Winston with violating a protection order, attempted second degree assault, and first degree burglary. The jury convicted Winston as charged. By special verdicts, the jury found that the conduct constituting a violation of the no-contact order was an assault but that Winston was not armed with a deadly weapon when he committed the first degree burglary.

¶10 The trial court sentenced Winston to a standard range sentence of 36 months, issued a domestic violence protection order forbidding contact with Mattingly, ordered a domestic violence evaluation and follow-up, and ordered Winston to pay a $100 "DV [domestic violence] fine" along with other fees and court costs. Although no argument was presented on the subject at sentencing, the court checked the box on the judgment and sentence saying that the crime involved domestic violence.

¶11 Winston appeals his conviction and sentence. We consolidated the appeal with his PRP.

## ANALYSIS

JUDICIAL FINDING OF DOMESTIC VIOLENCE

¶12 Winston argues that to be convicted of a domestic violence offense, the State had to prove beyond a reasonable doubt that he and Mattingly were "family or household members." Appellant's Br. at 5. He claims that because the jury was never asked to determine this, any enhanced penalties for domestic violence are improper because the penalties are not based on facts a jury found. For this reason, he claims that his sentence violates *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

¶13 The specific enhancements he challenges are: (1) a requirement that he receive a domestic violence evaluation and follow-up treatment, (2) an additional $100 fine to cover the cost of the evaluation, and (3) a no-contact order that results in reduced earned early release time.[3] He asks us to vacate the domestic violence finding and the three penalty enhancements he identifies.

A. Washington's Domestic Violence Statute

■ ¶14 In the domestic violence act, chapter 10.99 RCW, the legislature " 'recognize[d] the importance of domestic violence as a serious crime against society' " and resolved to ensure that domestic violence victims receive the maximum protection authorized by law. *State v. O.P.*, 103 Wn. App. 889, 891-92, 13 P.3d 1111 (2000) (quoting RCW 10.99.010). Finding that " 'the existing criminal statutes are adequate to provide protection for victims of domestic violence,' " the legislature focused instead on implementing procedural requirements designed to enhance enforcement of existing laws. *O.P.*, 103 Wn. App. at 892 (quoting RCW 10.99.010).

---

[3] Under former RCW 9.94A.728(1)(b)(ii)(B)(III) and (IV) (2003), an offender is qualified to earn up to 50 percent of aggregate earned release time if he is not confined pursuant to a sentence for a crime against persons as defined in former RCW 9.94A.411 (2004) or a felony that is domestic violence as defined in RCW 10.99.020.

¶15 The act therefore "created no new crimes but rather emphasized the need to enforce existing criminal statutes in an evenhanded manner to protect the victim regardless of whether the victim was involved in a relationship with the aggressor." *Roy v. City of Everett*, 118 Wn.2d 352, 358, 823 P.2d 1084 (1992). This was to combat the problem of crimes occurring between cohabitants being treated differently from the same crimes occurring between strangers. *See* RCW 10.99.010.

■ ¶16 A finding of domestic violence alone does not authorize an exceptional sentence under former RCW 9.94A.535(2)(h) (2003)[4] and does not impermissibly increase the potential punishment. *State v. Felix*, 125 Wn. App. 575, 578, 105 P.3d 427, *review denied*, 155 Wn.2d 1003 (2005).

## B. *Blakely v. Washington*

■ ¶17 The *Blakely* court applied the rule from *Apprendi* that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Blakely*, 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). The relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts but the maximum he may impose without any additional findings. *Blakely*, 542 U.S. at 303-04. When a judge inflicts punish-

---

[4] Former RCW 9.94A.535(2)(h) states:

(2) Aggravating Circumstances . . .

. . . .

(h) The current offense involved domestic violence, as defined in RCW 10.99.020, and one or more of the following was present:

(i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time;

(ii) The offense occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years; or

(iii) The offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim.

ment that the jury's verdict alone does not allow, the jury has not found all the facts that the law makes essential to the punishment and the judge exceeds his proper authority. *Blakely*, 542 U.S. at 304.

## C. No-Contact Order

■ ¶18 We hold that the trial court did not exceed its authority in issuing the no-contact order. Division One recently addressed this issue in *State v. Felix*, 125 Wn. App. 575. As in this case, the appellants in *Felix* claimed that the trial court's domestic violence finding increased the punishment for their crimes. *Felix*, 125 Wn. App. at 578. Division One determined that a no-contact order did not constitute punishment for purposes of the constitutional right to a jury trial. *Felix*, 125 Wn. App. at 579-80. Rather, no-contact orders are civil in nature and designed to protect third parties. *Felix*, 125 Wn. App. at 579 (citing *In re Pers. Restraint of Arseneau*, 98 Wn. App. 368, 380, 989 P.2d 1197 (1999)). We find *Felix* persuasive.

■■ ¶19 Furthermore, the trial court had discretion to impose the no-contact order even without the "domestic violence" designation. *See* former RCW 9.94A.030(12) (2003),[5] .505(8).[6] RCW 10.99.050 only specifies additional enforcement measures for no-contact orders that may already be issued as a sentencing condition. RCW 10.99-.050[7]; *Felix*, 125 Wn. App. at 580. The statute does not

---

[5] Former RCW 9.94A.030(12) states:

"Crime-related prohibition" means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted, and shall not be construed to mean orders directing an offender affirmatively to participate in rehabilitative programs or to otherwise perform affirmative conduct. However, affirmative acts necessary to monitor compliance with the order of a court may be required by the department.

[6] "As a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter." RCW 9.94A.505(8).

[7] RCW 10.99.050 states:

(1) When a defendant is found guilty of a crime and a condition of the sentence restricts the defendant's ability to have contact with the victim, such condition

give new grounds for imposing a no-contact order as punishment. *See* RCW 10.99.050.

## D. Reduced Opportunity for Early Release

■ ¶20 We also reject Winston's claim that the "domestic violence" designation violates *Blakely* because it will reduce his early release time. The jury convicted Winston of violating a court order and of first degree burglary. Former RCW 9.94A.411(2)(a) (2000) defines both these offenses as "crimes against persons." Under former RCW 9.94A-.728(1)(b)(ii)(B)(III) (2003), a defendant may earn up to 50 percent early release time unless the defendant is confined for committing "[a] crime against persons." Therefore, Winston's ineligibility for earned early release time is based on the jury's verdict.

■ ¶21 Even if the "domestic violence" designation had affected Winston's eligibility for early release time, such an effect does not implicate the jury requirement under *Blakely* because early release time does not increase a defendant's penalty above the statutory maximum. Rather, the correctional agency grants early release discretionarily based on the offender's good behavior and good performance while incarcerated. Former RCW 9.94A.728(1).

## E. Domestic Violence Evaluation and Treatment

■ ¶22 We also hold that the trial court's order requiring Winston to obtain domestic violence evaluation and treatment was not an impermissible increase in the sentence that violates *Blakely*. Rather, the order was within the court's discretion based on the jury's conviction of

shall be recorded and a written certified copy of that order shall be provided to the victim.

(2)(a) Willful violation of a court order issued under this section is punishable under RCW 26.50.110.

(b) The written order shall contain the court's directives and shall bear the legend: Violation of this order is a criminal offense under chapter 26.50 RCW and will subject a violator to arrest; any assault, drive-by shooting, or reckless endangerment that is a violation of this order is a felony.

Winston for crimes against persons. *See* former RCW 9.94A.411(2); former RCW 9.94A.715(1) (2003).[8]

¶23 When a court sentences a person to the custody of the Department of Corrections for a crime against persons, it is required to sentence the offender to community custody. Former RCW 9.94A.715(1). The conditions of community custody may include an order that the offender not have direct or indirect contact with the crime victim or a requirement that the offender participate in crime related treatment or counseling services. RCW 9.94A.715(2)(a),[9] .700(5)(b), (c).[10] In addition, "[t]he court may also order the offender to participate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community . . . ." RCW 9.94A.715(2)(a).

¶24 Because the trial court had discretion to order Winston to participate in rehabilitative programs reasonably related to the circumstances of the offense, we hold that Winston was not sentenced outside the statutory maximum for the crimes the jury found he committed.[11]

---

[8] Former RCW 9.94A.715(1) states:

When a court sentences a person to the custody of the department for . . . any crime against persons under RCW 9.94A.411(2) . . . the court shall in addition to the other terms of the sentence, sentence the offender to community custody for the community custody range established under RCW 9.94A.850 or up to the period of earned release awarded pursuant to RCW 9.94A.728 (1) and (2), whichever is longer.

[9] "[T]he conditions of community custody . . . may also include those provided for in RCW 9.94A.700(5)." RCW 9.94A.715(2)(a).

[10] RCW 9.94A.700(5) states:

As a part of any terms of community placement imposed under this section, the court may also order one or more of the following special conditions:

. . . .

(b) The offender shall not have direct or indirect contact with the victim of the crime or a specified class of individuals;

(c) The offender shall participate in crime-related treatment or counseling services.

[11] It makes no difference that on the judgment and sentence form, the court listed the domestic violence evaluation as part of the sentence and not as part of

### F. Fines

¶25 We hold that Winston's fines do not violate *Blakely* because they do not exceed the statutory maximum based on the facts the jury found. The jury found that Winston violated a protection order with conduct that constituted an assault, that he attempted second degree assault, and that he committed first degree burglary.

¶26 Violation of a protection order is a class C felony when that violation is an assault. RCW 26.50.110(4). Attempted second degree assault is also a class C felony. RCW 9A.36.021(2)(a);[12] RCW 9A.28.020(3)(c).[13] The statutory maximum fine that a court can impose for a class C felony is $10,000. RCW 9A.20.021(1)(c). First degree burglary is a class A felony with a statutory maximum fine of $50,000. RCW 9A.52.020(2); RCW 9A.20.021(1)(a).

¶27 Because the $100 "DV fine" did not exceed the statutory maximum for the crimes for which Winston was convicted, *Blakely* is not implicated. Furthermore, our conclusion should not be interpreted to mean that *Blakely* necessarily applies to monetary fines. That issue is not before us, and we do not address it. The exceptional sentence statute and sentencing guidelines at issue in *Blakely* addressed only a defendant's jail time, not his fines. *See Blakely*, 542 U.S. at 299-300.

¶28 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

---

Winston's community custody. RCW 9.94A.715(2)(a) authorizes the court to "order the offender to participate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense . . . ." We do not read this to mean that the court can order rehabilitative programs or other affirmative conduct only as part of a community custody term. The judgment and sentence is a single order, and we read it as a whole. Where a statute authorizes a court to impose community custody, the statute also authorizes the court to impose other conditions, such as participation in rehabilitative programs, calculated to maximize an offender's chances of successful reintegration into the community after he has served his sentence.

[12] "[A]ssault in the second degree is a class B felony." RCW 9A.36.021(2)(a).

[13] "An attempt to commit a crime is a . . . Class C felony when the crime attempted is a class B felony." RCW 9A.28.020(3)(c).

shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and BRIDGEWATER, J., concur.