208 P.3d 32 (2009)
STATE of Washington, Respondent,
v.
Warren Donell HAGLER, Appellant.
No. 61107-1-I.
Court of Appeals of Washington, Division 1.
May 26, 2009.
Andrew Zinner, Seattle, WA, for Appellant.
Daniel Kalish, James Whisman, Seattle, WA, for Respondent.

*33 PUBLISHED IN PART
AGID, J.
¶ 1 Under chapter 10.99 RCW, certain crimes are designated by the prosecutor or the court as domestic violence crimes. It is neither necessary nor advisable to inform the jury that charges have been designated as domestic violence crimes under chapter 10.99 RCW. In this case, however, doing so was harmless. We affirm Warren Hagler's convictions, rejecting his remaining claims. But because the court imposed a sentence that exceeds the statutory maximum, we remand for the court to correct the sentence.

BACKGROUND
¶ 2 In 2005, Hagler was a 40 year old man without a stable place to live. He met Magen Hanrahan, a 19 year old cosmetology student. They quickly began an intimate relationship, and Hagler moved into Hanrahan's apartment within days.
¶ 3 Hanrahan was having trouble making her rent and car payments. Hagler gave her $1,300 to $1,500 in cash and gifts. Hanrahan understood the cash was in exchange for letting Hagler live in her apartment and drive her car.
¶ 4 Not long after the relationship began, the two argued in the car and Hagler assaulted Hanrahan. Hanrahan testified that Hagler punched her or hit her several times with a gun, pulled her across the center console by her hair, and told her she "owed him" and "was going to go and be a prostitute and give him back all of his money." Hagler held a gun to her temple and neck and told her he would kill her.
¶ 5 When they returned to Hanrahan's apartment, Hagler again told her she must become a prostitute to repay his money. Hanrahan had never been a prostitute before. Over the course of a few days, Hagler drove Hanrahan to several locations to engage in prostitution. He instructed her about what types of men to look for and how to find out if they were undercover police. He kept her car and the keys to her apartment, drove up and down the street to watch her, and called her cell phone repeatedly to see whether she had met anyone and how much money she had earned. He told her he would kill her if she went to the police.
¶ 6 The third time Hagler took Hanrahan to prostitute, she decided to get away. She explained her situation to the first man who propositioned her and paid him $50 to take her to the Space Needle, where she had a friend pick her up and take her to the police station. She cooperated with police to lure Hagler to a meeting, where they arrested him.
¶ 7 The State charged Hagler with assault in the second degree, promoting prostitution in the first degree, unlawful possession of a firearm, and two counts of identity theft. On the charging documents, the State designated the assault charge and the promoting prostitution charge as domestic violence crimes.
¶ 8 Before trial, Hagler asked the court not to inform the jury of the domestic violence designations. The court denied the motion and read the charges as they appeared in the information, including the designation.
¶ 9 Hagler testified. He admitted he introduced the idea of prostitution as a solution to Hanrahan's money problems. He also acknowledged that he "smacked" Hanrahan and grabbed her by the hair in the car, but he denied using a gun. He explained she had "brung it on" herself by "disrespecting him," and claimed that Hanrahan had "agreed to prostitute prior to me smacking her," and that he didn't smack her "to force her into prostitution." According to Hagler, "the assault was separate from me  her prostituting."
¶ 10 Hagler also admitted that he opened a bank account under a false name, deposited bad checks from that account into Hanrahan's Qualstar Credit Union account using a Boeing Employees Credit Union (BECU) automated teller machine, and then immediately withdrew $500 to take advantage of BECU's policy allowing members to access that amount before their checks clear. Using Hanrahan's debit card and personal identification number, Hagler was able to do this several times before the credit union blocked the account.
*34 ¶ 11 At the close of trial, Hagler objected to including the domestic violence designation in the instructions to the jury. The court overruled the objection, and the designation appeared several times in the jury instructions and in three verdict forms.
¶ 12 The jury convicted Hagler of first degree promoting prostitution and two counts of identity theft, found him not guilty of unlawful possession of a firearm and second degree assault, and convicted him of the lesser included offense of assault in the fourth degree.
¶ 13 The court imposed the statutory maximum of 120 months for promoting prostitution and a concurrent, high end sentence of 57 months for identity theft. The court ordered the 120 month term to run consecutively to its 12 month sentence for the misdemeanor assault. Finally, the court imposed a 9 to 18 month term of community custody for each felony sentence.

DISCUSSION

Domestic Violence Designation
¶ 14 The domestic violence act, chapter 10.99 RCW, was designed to "recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse."[1] The legislature sought to correct "policies and practices of law enforcement agencies and prosecutors which have resulted in differing treatment of crimes occurring between cohabitants and of the same crimes occurring between strangers."[2] Among other things, the legislature required that courts "identify by any reasonable means on docket sheets those criminal actions arising from acts of domestic violence."[3] Pretrial no-contact orders are provided for, and such cases are to receive priority in scheduling.[4] The King County prosecutor designates domestic violence crimes on charging documents, presumably in part to assist the court in meeting these responsibilities.
¶ 15 The designation "does not itself alter the elements of the underlying offense; rather, it signals the court that the law is to be equitably and vigorously enforced."[5] The designation need not be proven to a jury under Blakely.[6] Upon conviction of a domestic violence offense as defined by RCW 10.99.020, however, "sentencing courts are authorized to impose specialized no-contact orders, violation of which constitutes a separate crime."[7]
¶ 16 Hagler contends that informing the jury of the designation is prejudicial and unnecessary. The State responds it merely allows the jury to understand the exact charges. Whether and how to instruct a jury is a matter of discretion.[8]
¶ 17 The jury's task is to decide whether the State has proved the elements of the charges beyond a reasonable doubt. A domestic violence designation under chapter 10.99 RCW is neither an element nor evidence relevant to an element. The fact of the designation thus does not assist the jury *35 in its task. We can see no reason to inform the jury of such a designation, and we believe that prejudice might result in some cases.
¶ 18 Here, however, any error was harmless. Hagler conceded he was guilty of promoting prostitution in the second degree. The use or threat of force elevates promoting prostitution to the first degree, and Hagler contends the jury might have inferred from the domestic violence designation that he used force or threat to compel Hanrahan into prostitution. But there was no need for inference here; there was ample direct evidence of actual force and threats. Hanrahan testified that Hagler blackened her eye and threatened to "make it a lot worse," hit her several times about the head, held a gun to her head, and threatened to kill her if she went to the police. Hagler admitted he smacked Hanrahan and, while holding her by her hair, told her she was going to pay him back. The evidence of conduct constituting domestic violence within the general understanding of the term was thus undisputed.
¶ 19 Further, the domestic violence designation clearly did not influence the jury's consideration of the assault charge because it acquitted Hagler of assault in the second degree and unlawful possession of a firearm, and convicted him only of the lesser included offense of assault in the fourth degree, which he conceded.
¶ 20 An "`error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'"[9] There is no reasonable probability of a different verdict here. Accordingly, any error was harmless.

Excessive Sentence
¶ 21 A sentence may not exceed the statutory maximum term set by the legislature.[10] The statutory maximum for promoting prostitution in the first degree is 120 months. The court imposed a sentence of 120 months plus 9 to 18 months' community custody on that count. The statutory maximum for identity theft in the second degree is 60 months. The court imposed a sentence of 57 months plus 9 to 18 months' community custody for the two identity theft convictions.
¶ 22 The State concedes that Hagler's term of confinement plus community custody exceeds the statutory maximum for these charges. It relies on State v. Sloan[11] for the proposition that the appropriate remedy is to remand for clarification that the term of confinement and community custody shall not exceed 120 months for promoting prostitution and 60 months for the two counts of identity theft.
¶ 23 Sloan has been called into question by our recent opinion in State v. Linerud.[12] That case held that "a sentence is indeterminate when it puts the burden on the [Department of Corrections] rather than the sentencing court to ensure that the inmate does not serve more than the statutory maximum."[13] Accordingly, "courts must limit the total sentence they impose to the statutory maximum. It is within the trial court's discretion to determine how much of that sentence is confinement and how much is community custody."[14]
¶ 24 We affirm Hagler's convictions and remand for resentencing in accord with Linerud. On remand the court should correct the apparent scrivener's error, through which the court recorded Hagler's offense score as 11 despite finding that it was 10.
¶ 25 The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.
I CONCUR: GROSSE, J.
*36 ELLINGTON, J. (Dissenting).
¶ 45 I agree that any instructional error was harmless under the facts of this case and otherwise join in the opinion, with one exception: I respectfully dissent from the majority's conclusion that Hagler must be resentenced under State v. Linerud, 147 Wash. App. 944, 197 P.3d 1224 (2008). I believe Linerud injects confusion into the sentencing process and unnecessarily restricts the sentencing court's ability to impose sentences the legislature has expressly authorized. I would remand solely for correction of the scrivener's error and to permit the sentencing court to clarify Hagler's sentences consistent with our decision in State v. Sloan, 121 Wash.App. 220, 87 P.3d 1214 (2004).
¶ 46 At the outset, I emphasize that the following analysis addresses the current statutory scheme, which was in effect at the time of Hagler's sentencing. In response to the budget emergency, our legislature has recently enacted significant changes to the provisions governing the supervision of offenders. See ENGROSSED SUBSTITUTE S.B. 5288, 61st Leg., Reg. Sess. (Wash.2009). Among other things, the legislature eliminated certain categories of offenders from supervision and replaced community custody ranges with fixed community custody terms. Upon initial review, it appears that the 2009 changes will eliminate or modify several statutory provisions at issue in this case. But similar provisions remain unchanged in other statutes. And most of the concerns that I have with the Linerud approach persist even if some of the specific statutes addressed are no longer valid.
¶ 47 The issue again involves the interplay between the terms of confinement, earned early release, and community custody and the statutory maximum sentence. For certain specified crimes, in addition to imposing a precise term of confinement, the court must sentence the offender "to community custody for the community custody range established under RCW 9.94A.850 or up to the period of earned release awarded pursuant to RCW 9.94A.728(1) and (2), whichever is longer." RCW 9.94A.715(1). The term of community custody under RCW 9.94A.850 is a range, and does not begin until the offender is released from confinement or transferred to community custody in lieu of earned early release. Id.
¶ 48 Because the Department of Corrections (DOC) determines when and whether to grant earned early release, the sentencing court cannot know when the defendant's term of community custody will begin. See State v. Pharris, 120 Wash.App. 661, 664, 86 P.3d 815 (2004) (potential earned early release award prevented precise determination of community placement term). Thus in some circumstances, as here, the standard range for confinement, combined with the mandatory range for community custody, may theoretically exceed the statutory maximum. Under RCW 9.94A.505(5), "a court may not impose a sentence providing for a term of confinement or community supervision, community placement, or community custody which exceeds the statutory maximum for the crime" set by the legislature.[1] (Emphasis added.)
¶ 49 The question is how to ensure this does not in fact occur. In Sloan, the trial court imposed the statutory maximum term of 60 months confinement and 36 to 48 months of community custody. We held this sentence did not violate RCW 9.94A.505(5), noting that if the defendant served the full term of confinement, she would be released without further obligation and that if she earned early release credits, she would be transferred to community custody until the expiration of the maximum term. "In no event will she serve more than the statutory maximum sentence." Sloan, 121 Wash.App. at 223, 87 P.3d 1214. But because such sentences may generate some administrative uncertainty, we remanded for the sentencing court to minimize this risk by expressly stating the maximum sentence in the judgment and sentence: "[W]hen a court imposes community custody that could theoretically exceed *37 the statutory maximum sentence for that offense, the court should set forth the maximum sentence and state that the total of incarceration and community custody cannot exceed that maximum." Id. at 223-24, 87 P.3d 1214.
¶ 50 In the five years since Sloan was decided, the other two divisions of this court have agreed that a sentence thus clarified is valid and does not violate RCW 9.94A.505(5). See State v. Vant, 145 Wash.App. 592, 605, 186 P.3d 1149 (2008); State v. Hibdon, 140 Wash.App. 534, 538, 166 P.3d 826 (2007); State v. Torngren, 147 Wash.App. 556, 196 P.3d 742 (2008).[2] We have also acknowledged that Sloan does not provide the only means by which the sentencing court can comply with RCW 9.94A.505(5). See State v. Davis, 146 Wash.App. 714, 192 P.3d 29 (2008) (sentencing court may either clarify sentence in accordance with Sloan or impose exceptional sentence downward).[3]
¶ 51 In Linerud, another panel of this court recently reached a different result. Linerud was convicted of a class C felony, and was sentenced to 43 months of incarceration and 36 to 48 months of community custody. In accordance with Sloan, the court provided in the judgment and sentence that the combined period of incarceration and community custody could not exceed the statutory maximum of 60 months. The Linerud court rejected our approach in Sloan, holding that it results in a sentence that is "indeterminate" because it places the burden on DOC to ensure that an inmate does not serve more than the statutory maximum. Linerud, 147 Wash.App. at 948, 197 P.3d 1224.
¶ 52 Linerud rests its analysis on the court's obligation under the Sentencing Reform Act to impose a determinate sentence. Id. RCW 9.94A.030(18) defines "determinate sentence" as a sentence "that states with exactitude the number of actual years, months, or days of total confinement, of partial confinement, of community supervision." The Linerud court applied this definition as the standard by which to assess the validity of every sentence:
Because a court may not impose a sentence that exceeds the statutory maximum and must impose a determinate sentence, it may not sentence a defendant to a term that, on its face, exceeds the statutory maximum and leave to the DOC responsibility for assuring that the sentence is lawful.
. . . .
In light of the determinate sentencing requirement and the risks of requiring the DOC to ensure the inmate does not serve in excess of his or her maximum sentence, we hold that courts must limit the total sentence they impose to the statutory maximum. It is within the trial court's discretion to determine how much of that sentence is confinement and how much is community custody.
Id. at 950, 197 P.3d 1224.
¶ 53 I find this analysis problematic for several reasons. First, it emphasizes the definition without considering its legislative context.[4] Second, it construes too narrowly what is meant by "imposing" a sentence. Third, it rests upon distrust of the agency to which the legislature itself has entrusted certain relevant decisions. And fourth, it presents significant practical difficulties for trial courts, which must comply both with the provisions of the act and with Linerud's demand for a "determinate" sentence (that is, one that is exact and free from DOC's involvement).
¶ 54 The determinate sentence definition has been in the Sentencing Reform Act since its enactment in 1981.[5] Although sentences *38 under the SRA are generally considered "determinate," i.e., specifying the terms with "exactitude," the legislature has never required that the definition be applied mechanically.[6] From the beginning, the legislature has created exceptions to the general goal of "determinate" sentences,[7] and has regularly adopted sentencing provisions inconsistent with a strict reading of the definition.[8] To state with exactitude the number of days to be served in various types of custody is now largely impossible. Yet the legislature has seen no reason to amend the definition, which strongly suggests that the majority's strict reading is not consistent with legislative intent. Significantly, RCW 9.94A.030(18) does not reference community custody or community placement as an element of a determinate sentence, a fact that Linerud does not address. Cf. In re Pers. Restraint of Caudle, 71 Wash.App. 679, 682, 863 P.2d 570 (1993).
¶ 55 Reading the definition in context, the Sloan approach results in a sentence that is "determinate" because it imposes specific terms for confinement and community custody as required by the act for the offense, and it implements the prohibition against exceeding the statutory maximum. The sentence imposed upon Hagler was exact to the extent the act now allows, and did not violate the prohibition against exceeding the statutory maximum.
¶ 56 The Linerud court took the view, however, that Sloan results in an indeterminate sentence because DOC, not the sentencing court, determines the length of the sentence: "Considering both the legal and policy arguments, we hold that a sentence is indeterminate when it puts the burden on the DOC rather than the sentencing court to ensure that the inmate does not serve more than the statutory maximum." Linerud, 147 Wash.App. at 948, 197 P.3d 1224.
¶ 57 I believe this view is incorrect. The sentencing court determined the length of sentence, subject to the statutory maximum. In other words, the sentence imposed was the statutory maximum, expressed in terms of confinement and community custody. Uncertainties in the length of both are built into the act. For this and other reasons, the legislature requires DOC to administer every sentence.[9] To do so, DOC must necessarily determine, among other things, an inmate's time served, earned early release credit, date of release from full custody, length of community custody, and discharge date. The statutory maximum release date is an inherent part of such calculations. DOC is prohibited from setting a release date beyond the statutory maximum. Cf. RCW 9.94A.737(4).
¶ 58 Merely tracking relevant dates does not amount to imposing the sentence. I do not see how DOC's determinations in administering a sentence under Sloan are substantively different from those required for administering any other sentence under the SRA, whether or not the sentence approaches the statutory maximum. In its essence, the Sloan clarification merely reinforces DOC's existing obligations by calling attention to the risk of exceeding the maximum.
¶ 59 Further, DOC cannot calculate earned early release credit until the defendant begins serving the sentence, and community custody is a mandatory range directly linked *39 to earned early release.[10] In its definition of a determinate sentence, RCW 9.94A.030(18), the legislature expressly provided that "[t]he fact that an offender through earned release can reduce the actual period of confinement shall not affect the classification of the sentence as a determinate sentence." The legislature recognized from the beginning that inexactitude as to the actual length of incarceration or the precise date community custody will commence does not render a sentence impermissibly "indeterminate."
¶ 60 Under the Sloan approach, the sentencing court imposes the length of the sentence, subject only to the statutory maximum. Such a sentence is no less determinate than when the combined terms of confinement and community custody precisely equal the statutory maximum.
¶ 61 The Linerud court expressed concern that DOC may overlook or not comply with a handwritten notation on the judgment and sentence. But as a practical matter, the sentencing court will often have to record critical elements of a sentence by hand on the judgment and sentence. Avoiding frequent handwritten notations is a matter of modifying existing sentencing forms. I am not aware that DOC makes a practice of calculating release dates inaccurately, whether they occur before or on the statutory maximum expiration date, but there is nothing in the Linerud approach to warrant against the possibility of miscalculation in an individual case.[11]
¶ 62 By demanding that the sentencing court determine a combination of confinement and community custody that cannot exceed the statutory maximum, Linerud injects yet another layer of complexity into an already embrangled process. There appear two possible ways for the beleaguered sentencing court to comply. If the standard range permits, the court may try to anticipate DOC's probable earned early release policy at the relevant time, anticipate the defendant's likely eligibility, and calculate the resulting possible dates for transfer to community custody under various scenarios, so that the confinement and community custody fall within the maximum term.
¶ 63 The ranges will often not permit such adjustments, however. Linerud, for example, received the minimum sentence under the standard range, but the total combined term exceeded the statutory maximum. It would appear, although the Linerud court did not say so, that on remand the only option for the sentencing court will be an exceptional sentence downward.[12] An exceptional sentence is an approved option in these circumstances, see Davis, 146 Wash.App. at 723-24, 192 P.3d 29, but nothing in the act suggests this is the legislature's preferred approach, and it will frequently result in a windfall to the offender.[13] Thus in addition *40 to the practical difficulties and limited utility of this exercise, the Linerud restriction thwarts the legislative intent by making the maximum term unavailable to the sentencing court, even where the sentence, as imposed under Sloan, could be served within the statutory maximum. It seems odd indeed to invoke one legislative provision to curtail others when they are easily harmonized. See In re Pers. Restraint of Dalluge, 162 Wash.2d 814, 818, 177 P.3d 675 (2008) (when ascertaining legislative intent, an appellate court views the sentencing scheme as a whole, attempting to harmonize all relevant provisions).
¶ 64 I am also concerned with the Linerud court's characterization of a judgment and sentence in violation of RCW 9.94A.505(5) as "invalid on its face," a proposition drawn from State v. Zavala-Reynoso, 127 Wash. App. 119, 110 P.3d 827 (2005). The concept of facial validity is generally limited to application of the one year time bar for collateral attacks. See RCW 10.73.090(1) (time bar for collateral attack does not apply if judgment and sentence is not "valid on its face"). Zavala-Reynoso involved a collateral attack under CrR 7.8 and determined that the time bar did not apply to a judgment and sentence that exceeded the statutory maximum. Zavala-Reynoso did not address Sloan or any analogous decision, and Division Three subsequently adopted the Sloan reasoning and expressly acknowledged that Zavala-Reynoso is consistent with Sloan. State v. Hibdon, 140 Wash.App. 534, 538, 166 P.3d 826 (2007) (Sloan and Zavala-Reynoso are both valid "option[s]"). Zavala-Reynoso does not support the proposition that a sentence clarified under Sloan is a judgment and sentence that is invalid on its face.
¶ 65 In my view, when the sentencing court enters a judgment and sentence in accordance with Sloan, it does not impose a sentence exceeding the statutory maximum in violation of RCW 9.94A.505(5). The sentence is valid and is no more "indeterminate" than when all of the same elements will be completed before the statutory maximum.
¶ 66 I therefore respectfully dissent. I would remand for the relief Hagler requested in his brief  the clarification required by Sloan.
NOTES
[1] RCW 10.99.010.
[2] Id.
[3] RCW 10.99.040(1)(d). "Domestic violence" is defined by the statute to include a list of crimes "when committed by one family or household member against another." RCW 10.99.020(5).
[4] RCW 10.99.040(2).
[5] State v. O.P., 103 Wash.App. 889, 892, 13 P.3d 1111 (2000).
[6] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); State v. Winston, 135 Wash.App. 400, 406-10, 144 P.3d 363 (2006).
[7] State v. O'Connor, 119 Wash.App. 530, 547, 81 P.3d 161 (2003), aff'd, 155 Wash.2d 335, 119 P.3d 806 (2005).
[8] State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995) (rulings on motions in limine reviewed for abuse discretion); State v. Kennard, 101 Wash.App. 533, 537, 6 P.3d 38 (a court has discretion in wording jury instructions), review denied, 142 Wash.2d 1011, 16 P.3d 1267 (2000). A court abuses its discretion when its decision is unreasonable or based upon untenable grounds or reasons. State v. Brown, 132 Wash.2d 529, 572, 940 P.2d 546 (1997), cert. denied, 523 U.S. 1007, 118 S.Ct. 1192, 140 L.Ed.2d 322 (1998).
[9] State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997) (quoting State v. Tharp, 96 Wash.2d 591, 599, 637 P.2d 961 (1981)).
[10] RCW 9.94A.505(5).
[11] 121 Wash.App. 220, 87 P.3d 1214 (2004).
[12] 147 Wash.App. 944, 197 P.3d 1224 (2008).
[13] Id. at 948, 197 P.3d 1224.
[14] Id. at 951, 197 P.3d 1224.
[1] In this case, all three of Hagler's sentences theoretically exceeded the statutory maximum: first degree promoting prostitution (120 months plus 9 to 18 months), 120 month maximum; and two counts of second degree identity theft (57 months plus 9 to 18 months), 60 month maximum.
[2] I am not aware that the legislature has amended any provisions in response to the Sloan interpretation of RCW 9.94A.505(5).
[3] Our Supreme Court may address the validity of the Sloan approach in In re Pers. Restraint of Brooks, No. 80704-3, set for argument May 28, 2009.
[4] The court's reasoning has consequences that go beyond the issues associated with the statutory maximum.
[5] Former RCW 9.94A.030(8) (1981) provided: "`Determinate sentence' means a sentence that states with exactitude the number of actual years, months, or days of total confinement, of partial confinement, of community supervision, the number of actual hours or days of community service work, or dollars or terms of a fine or restitution. The fact that an offender through `earned early release' can reduce the actual period of confinement shall not affect the classification of the sentence as a determinate sentence."
[6] Currently, the SRA specifies when a sentence must be determinate in only two situations, neither of which is relevant here: RCW 9.94A.535 (sentences outside the standard range) and RCW 9.94A.505(2)(b) (offenses with no specified standard range).
[7] The original provisions governing first time offenders and sex offenders permitted sentences that were at least partially "indeterminate." See D. BOERNER, SENTENCING IN WASHINGTON, § 4.1, n. 4 (1985).
[8] See, e.g., RCW 9.94A.712 (requiring court to impose an indeterminate sentence, setting maximum and minimum terms, for specified nonpersistent offenders).
[9] See, e.g., RCW 9.94A.728 (earned early release credits), 9.94A.625 (tolling community supervision), 9.94A.700 (community placement), 9.94A.760 (legal financial obligations).
[10] See RCW 9.94A.728(1) ("The correctional agency shall not credit the offender with earned release credits in advance of the offender actually earning the credits.")
[11] The Linerud court cited In re Pers. Restraint of Dutcher, 114 Wash.App. 755, 60 P.3d 635 (2002), when expressing its uneasiness that DOC would accurately calculate an inmate's release date. But Dutcher and the other cases cited in Linerud involved a legal dispute over the validity of specific DOC policies, not its ability or willingness to carry out the routine calculations required to track the length of every inmate's sentence.
[12] In a footnote, the Linerud court suggests that if the sentencing court wants to impose the maximum terms of confinement and community custody, "it may do so under the second option in RCW 9.94A.715(1), which permits it to impose a term of community custody equal to the earned early release time." Linerud, 147 Wash.App. at 950 n. 17, 197 P.3d 1224. But RCW 9.94A.715(1) requires the court to impose community custody "for the community custody range established under RCW 9.94A.850 or up to the period of earned release awarded pursuant to RCW 9.94A.728(1) and (2), whichever is longer." (Emphasis added.) It thus appears the suggestion in the footnote is incorrect.
[13] Linerud serves as a useful example. His community custody range was 36 to 48 months. If the sentencing court on remand wishes to impose the same period of confinement, it would have to impose 43 months' confinement and an exceptional sentence of 17 months' community custody, for a total of the statutory maximum of 60 months. Linerud would be eligible for 1/3 earned early release at 29 months. If released then, he would serve 17 months in community custody, for a total of 46 months. Under the Sloan approach, he would serve 29 months in custody and 31 months in community custody, for a total of 60 months. Whether an offender receives a windfall under Linerud will likely depend upon earned early release credits.