
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68146-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ROGER HOLMES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 10, 2013 |

SPEARMAN, A.C.J. — Roger Holmes appeals the sentence imposed for his conviction of felony violation of a court order, arguing that the trial court violated his right to a jury trial by designating the offense as one of "domestic violence" and by imposing an aggravating factor of rapid recidivism. In his pro se statement of additional grounds, Holmes also challenges his conviction. Finding his arguments are without merit, we affirm.

## FACTS

On October 11, 2010, the Seattle Municipal Court issued a no-contact order prohibiting Roger Holmes from contacting his ex-girlfriend, Michelle Garza. The order precluded Holmes from assaulting or "causing or attempting to cause physical harm, bodily injury" to Garza; from "coming near and from having any contact whatsoever" with Garza; and from "entering or knowingly coming within

or knowingly remaining within 500 feet distance" of Garza. Report of Proceedings (RP) (10/31/11) at 11-12. The order further provided that Holmes "can be arrested even if the person or persons who obtain the order invite or allow you to violate the order's prohibitions." Id. at 12.

On November 16, 2010, Dustin Byers saw a woman and one other person arguing and fighting inside and around a car parked across the street from his home. The argument was "heated" and "seemed violent in nature." RP (10/27/11) at 35. Byers called the police. When he went outside, the car was driving away, and the woman was lying in the street. The woman, Garza, told a Seattle Fire Department lieutenant that she had been injured and thrown from the car by her boyfriend, Holmes.

The State charged Holmes with one count of felony violation of a court order.[1] The information alleged that the crime was one of domestic violence, and that Holmes committed the offense shortly after being released from incarceration.

Before trial, Holmes sought a bifurcated proceeding where the rapid recidivism aggravating factor would be determined separately after the guilt phase of the trial. The State agreed that should the jury return a guilty verdict, the same jury would be brought back to hear testimony regarding the aggravating circumstance. At the close of evidence on the guilt phase, counsel and the court

---

[1] The State also initially charged Holmes with one count of first degree robbery for allegedly stealing the car, but later amended the information to drop this count because it was unclear whether Holmes or Garza owned the car.

2

again discussed the process for the bifurcated proceeding on the aggravating factor. Defense counsel conferred with Holmes, who then stipulated to the rapid recidivism aggravating factor.

The jury convicted Holmes of felony violation of a court order. Given Holmes' stipulation, the jury was not asked to determine if this was a crime of domestic violence, and instead, the court made a finding that that a "Crime of Domestic Violence as defined in RCW 10.99.020 was pled and proved . . . ." CP at 45. With an offender score of 17, Holmes was subject to the statutory maximum of 60 months. The court imposed a drug offender sentencing alternative with 30 months of incarceration and 30 months of community custody. Holmes appeals his sentence, and in his pro se statement of additional grounds, he challenges his conviction.

## DISCUSSION

Domestic violence designation. Holmes argues the portion of his judgment and sentence that designates his conviction for felony violation of a court order as one of "domestic violence" should be stricken because the jury was never asked to determine whether the crime was one of domestic violence. He contends that this designation could lead to increased punishment. We disagree.

The right to a jury trial, as specified in the Sixth Amendment of the United States Constitution and article I, sections 21 and 22 of the Washington Constitution, requires "that a sentence be authorized by the jury's verdict." State

v. Williams–Walker, 167 Wn.2d 889, 896, 225 P.3d 913 (2010). Thus, due process requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); see also Blakely v. Washington, 542 U.S. 296, 303-04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and Williams–Walker, 167 Wn.2d at 896-97.

In State v. Hagler, 150 Wn. App. 196, 201, 208 P.3d 32 (2009), this court explained that the King County prosecutor designates crimes arising from "domestic violence" in charging documents, so that the justice system can "'recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse'" (quoting RCW 10.99.010). We also held that this "designation need not be proven to a jury under Blakely." Id. (citing Blakely, 542 U.S. 296, 124 S.Ct. 2531; State v. Winston, 135 Wn. App. 400, 406-10, 144 P.3d 363 (2006)). A trial court can make this finding on its own because it "'does not itself alter the elements of the underlying offense . . . .'" Hagler, 50 Wn. App. at 201 (quoting State v. O.P., 103 Wn. App. 889, 892, 13 P.3d 1111 (2000)). The domestic violence designation, however, would need to be proven to a jury if it "increases the defendant's potential punishment." State v. Felix, 125 Wn. App. 575, 577, 105 P.3d 427 (2005).

4

Here, it was the trial court that made a finding of domestic violence, and the parties do not dispute that the jury was not asked to make such a determination. But the trial court's finding did not increase Holmes' punishment, and as such, a jury finding was not required for the domestic violence designation. Hagler, 150 Wn. App. at 201. Holmes nevertheless argues the domestic violence designation must be vacated because, based on a 2010 amendment to the Sentencing Reform Act, the finding could possibly lead to increased punishment for future crimes. See Opening Brief of Appellant at 9 (domestic violence finding "will lead to increased punishment should Mr. Holmes be convicted of a new crime involving domestic violence").

But even assuming Apprendi applies where a factual determination could increase punishment for future, as-yet-uncommitted crimes, the plain language of the statutory amendment excludes it from affecting Holmes. Indeed, RCW 9.94A.525(21)(a) as amended in 2010 affects offender scores only if the "domestic violence as defined in RCW 9.94A.030 was plead and proven after August 1, 2011." Here, Holmes' offense was plead in an information on January 13, 2011, before the August 1, 2011 date specified in RCW 9.94A.525(21)(a). The domestic violence designation thus cannot increase Holmes' potential punishment, and the trial court did not err by imposing the designation.

Rapid recidivism aggravating factor. Holmes next argues his sentence must be vacated because the rapid recidivism aggravating factor was not found

by the jury, and "Mr. Holmes did not waive the right to a trial by jury on this factor, either orally or in writing." Opening Brief at 10. We disagree.

A record sufficiently demonstrates waiver of the right to a jury trial on an aggravating factor "if the record includes either a written waiver signed by the defendant, a personal expression by the defendant of an intent to waive, or an informed acquiescence." State v. Cham, 165 Wn. App. 438, 448, 267 P.3d 528 (2011). Additionally, the facts supporting an aggravating factor need not be proven to a jury beyond a reasonable doubt if "the defendant stipulates to the aggravating facts." RCW 9.94A.537(3). In Cham, we held that the defendant's apparent understanding of the role of a jury, combined with defense counsel twice telling the court the defendant wanted to waive a jury trial, overcame any presumption of lack of a knowing waiver:

> Cham's counsel twice told the court that she had consulted with Cham and that he wanted to waive his right to a jury trial. First, without Cham present, defense counsel told the court, "I spoke with my client and he has agreed to waive jury for determining the aggravating factor of rapid recidivism." Later, with Cham in attendance, defense counsel stated, "[F]or the record, Mr. Cham, after consultation, has waived the presence of the jury for a decision on the aggravating factor of rapid recidivism, and, the jury has been dismissed at this point." Also, during the court's colloquy with Cham to determine the adequacy of his interpreters, Cham showed his knowledge of the function and role of the jury. As noted by the State, Cham also invoked his right to a jury trial on the underlying charges twice before agreeing to a bench trial on rapid recidivism. The specific facts of this case, including Cham's colloquy with the court about the role of a jury, his jury trial experience, and the unchallenged statements of his counsel, overcome any presumption that he did not make a knowing, intelligent, and voluntary waiver. They establish an informed acquiescence.

Cham, 165 Wn. App. at 449.

Similar to Cham, the record here shows that Holmes was informed of and acquiesced or stipulated to waiving a jury trial on the aggravating factor of rapid

recidivism. Holmes understood the function and role of the jury. He invoked his right to a jury trial on the underlying charges. He was also present for extensive pre-trial discussion and planning for a bifurcated proceeding where the aggravating factor would be determined separately after the guilt phase of the trial.

Indeed, with Holmes present, the State agreed that should the jury return a guilty verdict, the same jury would be brought back to hear testimony regarding the aggravating circumstance. At the close of evidence on the guilt phase, Holmes was present when counsel and the court, while waiting for the jury to return a verdict, again discussed the process for the bifurcated proceeding on the aggravating factor. At this point, defense counsel conferred with Holmes, who then stipulated to the rapid recidivism aggravating factor:

> The Court:  . . . well, let's let Ms. Rivas talk to her client.
>
> Ms. Rivas:  And, your Honor, Mr. Holmes and I had conferred previously about this. I have spoken with him again this morning, and I appreciate the Court's indulgence. We would stipulate to the aggravator should the jury come back with a guilty verdict in this case as it doesn't add anything to his score. Mr. Holmes has 14 or 15 points listed on his criminal history. It seems unlikely to me the State would fail to prove, you know, seven of those, which at that point, it would make a difference for Mr. Holmes. So we would stipulate to the aggravator so that becomes an issue.

RP (11/1/11) at 6-7. In sum, the facts in the record here establish an informed acquiescence or stipulation to the aggravating factor of rapid recidivism, and we reject Holmes' arguments on this issue.

Statement of Additional Grounds. In his RAP 10.10 statement of additional grounds for review, Holmes argues the police statements in the affidavit of

7

probable cause were falsified, and that the prosecutor's office committed misconduct by pursing charges based on the affidavit. Given this argument relies upon matters outside the record, it is not reviewable on direct appeal. State v. McFarland, 127 Wn.2d 322, 338 n. 5, 899 P.2d 1251 (1995).

Holmes next argues that his right to speedy trial was violated. He does not, however, provide any citations to the record on this issue, or make any specific argument or authority regarding this argument. As such, we are unable to review this argument. See RAP 10.3(a)(6) (appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record").

Finally, Holmes appears to contend his conviction for violation of a no-contact order must be reversed because the judge who issued the order did not instruct him what to do in a situation where Garza was the person who initiated contact. Holmes' argument is difficult to follow. He does not explain or develop his argument, and his only authorities in support of this argument are an unpublished case and a statute, neither of which are about violation of a no-contact order. To the extent Holmes is arguing the evidence is insufficient to demonstrate he knowingly violated the no-contact order, Holmes has not provided the court with a record adequate for review. To prove this element at trial, the State introduced the no-contact order, as well as a recording of portions of the hearing in which the no-contact order was entered. Holmes failed to

8

designate, however, these exhibits, and as such, we are unable to review this argument.

Affirmed.

WE CONCUR:

Spearman, A.C.J.

Cox, J.