[No. 58214-9.    En Banc.    September 10, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. DARVIL
DAVIS, *Petitioner*.

658

*Andrew P. Zinner* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Theresa Fricke, Senior Prosecuting Attorney,* for respondent.

UTTER, J. — Petitioner Darvil[1] Davis seeks review of his conviction for second and fourth degree assault. Two issues are presented on review. First, whether the information charging Davis with fourth degree assault conveyed the con-

---

[1] The defendant was originally charged as Darvil Davis, but later stated his correct name as Davil Davis.

stitutionally required notification of the charge. Second, whether Davis received ineffective assistance of counsel when counsel failed to object to giving the jury an aggressor instruction. We affirm Davis's conviction.

I

On the evening of August 1, 1988,[2] Davil Davis and his girlfriend, Darlynn Ferguson, were entertaining four guests at their apartment — Wayne Ruziska, Donald Buckley, Sonya Gadberry, and Jennifer Thomas. Ferguson became intoxicated and argued with Davis. She left the apartment to go on a walk with her friend Gadberry. When they returned Gadberry went on a walk with Ruziska. While they were gone, Ferguson and Davis resumed their argument and Davis struck Ferguson at least once on the face. Subsequently, Davis asked the two remaining guests to leave and they complied.

When Gadberry returned from her walk, the other guests told her that Davis had hit Ferguson. Gadberry was concerned about Ferguson's safety so she returned to the apartment. Ferguson would not leave the apartment, so Gadberry left alone. Gadberry ran across the complex to find a phone to call the police.

Gadberry went to Joe Locke and Gary Rowell's apartment, but they did not have a phone. Locke and Rowell decided to go to Davis's apartment while Gadberry went across the street to use a phone. They crossed the apartment complex to Davis's apartment and pounded or knocked on the door. Ferguson testified that the apartment door was open and that one of the men put a foot in the door and could have come in if he had wanted to. Ferguson also testified that there were several people outside the apartment yelling racial epithets.

Davis opened the door and fought with one or both of the men. Ruziska testified they exchanged words and then

---

[2]In the Court of Appeals opinion the date is improperly stated as August 8, 1988. *See State v. Davis*, 60 Wn. App. 813, 815, 808 P.2d 167 (1991).

Davis punched Rowell, starting the fight. Davis stated a tall man raised his arms with open hands, but did not come toward Davis. He claims to have believed this was an attack motion so he responded by pushing the man and wrestling with him.

Davis went back inside his apartment and testified he tried to call 911, but his phone did not work. He reemerged on the landing to his apartment with a knife in the back of his pants. At this point, testimony about what happened differs markedly. Davis testified that a "tall guy" came through the crowd and made a punching motion toward him, so Davis stabbed him. Locke testified that Davis came out of the apartment and exchanged words with Daniela Gudmundson, a friend of Locke and Rowell and then pushed her. Locke stated he threw Davis off Gudmundson and then Davis stabbed him. After stabbing Locke, Davis also stabbed Martyn Richards and then went back inside his apartment. Davis testified he called 911. The police arrived to find Davis and Darlynn in their apartment and several people in the courtyard of the complex.

Davis was charged with one count of fourth degree assault for slapping Ferguson and two counts of second degree assault for stabbing Locke and Richards. His attorney did not make a motion to dismiss the fourth degree assault charge or request a bill of particulars. Davis denied assaulting Ferguson, stating that he only hit her to calm her down and claimed self-defense on the two counts of second degree assault.

The trial court gave the jury a self-defense instruction, and an aggressor instruction. The instruction stated:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Clerk's Papers, at 61. Essentially, the aggressor instruction provided that if the jury found Davis provoked the fight,

then self-defense would not apply. Davis's attorney failed to take exception to this instruction. The jury found him guilty on one count of second degree assault for stabbing Locke and on the one count of fourth degree assault. A verdict was not agreed upon on the second count of second degree assault.

Davis appealed, and the Court of Appeals, Division One, affirmed his conviction. *State v. Davis*, 60 Wn. App. 813, 808 P.2d 167 (1991). Davis petitioned for review by this court and we now affirm.

## II

Davis contends that the information charging fourth degree assault did not convey the constitutionally required notification of the charge. We conclude that the information contained all of the essential elements of fourth degree assault and is, therefore, constitutionally sufficient.

This court has held that "[a]ll essential elements of a crime, statutory or otherwise, must be included in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him." *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991).[3] We noted that "[t]he primary goal of the 'essential elements' rule is to give notice to an accused of the nature of the crime that he or she must be prepared to defend against." 117 Wn.2d at 101 (citing 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.2, at 446 (1984); 1 C. Wright, *Federal Practice* § 125, at 365 (2d ed. 1982)).

Nonetheless, an information which is "not challenged until after the verdict will be more liberally construed in favor of validity than those challenged before or during trial." 117 Wn.2d at 102. Because Davis did not challenge the sufficiency of that part of the information charging fourth degree assault until he appealed his conviction, the information will be construed liberally.

---

[3]The Court of Appeals found that an information need not inform the defendant of court implied elements of a crime. *Davis*, 60 Wn. App. at 817-18. This statement is inconsistent with our subsequent holding in *Kjorsvik*.

In this case, count 3 of the information charged:

> That the defendant Darvil [sic] Davis, in King County, Washington, on or about August 1, 1988, did assault Darlynn Ferguson;
> Contrary to RCW 9A.36.041, and against the peace and dignity of the state of Washington.

Supplemental Clerk's Papers, at 2. The information includes all of the statutory elements of fourth degree assault,[4] but fourth degree assault also includes the court implied element of intent. *State v. Robinson*, 58 Wn. App. 599, 606, 794 P.2d 1293 (1990), *review denied*, 116 Wn.2d 1003, 803 P.2d 1311 (1991). Davis argues the information fails to meet constitutional standards because it does not include the nonstatutory element of intent.

We faced an analogous issue in *State v. Hopper*, 118 Wn.2d 151, 822 P.2d 775 (1992). In *Hopper* we held when construed liberally "assault" in a charging document conveyed the statutory element of "knowingly" for second degree assault. 118 Wn.2d at 159. The information in *Hopper* stated:

> That the defendant . . . did *assault* Officer D. Shelton . . . with a ~~deadly~~ [sic] weapon, and other instrument or thing likely to produce bodily harm, to-wit: a flashlight . . . .[5]

(Italics ours.) 118 Wn.2d at 154. In *Hopper* all the essential elements of second degree assault were present in the information. 118 Wn.2d at 159.

■ *Hopper* is not distinguishable simply because the essential element there was statutory, whereas the element at issue here, intent, is a court-implied element. In determining the sufficiency of an information the distinction

---

[4]The relevant portion of RCW 9A.36.041 provides:

"(1) A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another."

[5]The information charging Davis with fourth degree assault is very similar to the information in *Hopper*. The main difference between the two charging documents is the section regarding a deadly weapon present in the information in *Hopper*, which is required for second degree assault, but not fourth degree assault. *Compare* RCW 9A.36.021 *with* RCW 9A.36.041.

between statutory and court-implied elements of a crime is not determinative provided they are essential elements of the crime charged. *See Kjorsvik*, 117 Wn.2d at 97 (holding that "[a]ll essential elements of a crime, statutory or otherwise, must be included in a charging document").

■ Our analysis in *Hopper* indicates assault adequately conveys the notion of intent. In *Hopper* this court determined that assault is a *willful* act. *Hopper*, 118 Wn.2d at 158 (citing *Webster's Third New International Dictionary* 130 (1971)). Additionally, "language alleging assault contemplates *knowing, purposeful* conduct." (Italics ours.) 118 Wn.2d at 158 (citing *State v. Osborne*, 102 Wn.2d 87, 94, 684 P.2d 683 (1984)). Also, " ' "assault" is *not* commonly understood as referring to an *unknowing* or *accidental* act.' " (Italics ours.) 118 Wn.2d at 158 (quoting *Osborne*, 102 Wn.2d at 94). Furthermore, " 'assault' includes the element of *intent*." (Italics ours.) 118 Wn.2d at 159 (citing 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.2, at 453 (1984)).

Therefore, assault conveys the intent element for fourth degree assault, just as it conveys the "knowingly" element of second degree assault. All of the essential elements of fourth degree assault are, therefore, present in the charging document.

■ Even if the charging document includes all of the essential elements of the crime, if the defendant was actually prejudiced by vague or inartful language the document will be held insufficient. *Kjorsvik*, 117 Wn.2d at 105-06. In this present case, there is no claim of prejudice on appeal and Davis does not challenge the Court of Appeals holding that he was not prejudiced in his ability to prepare a defense.

Davis also challenges the Court of Appeals holding that the various common law methods of committing assault[6] are

---

[6]The Court of Appeals summarized the three ways to commit fourth degree assault as follows:

(1) intending to inflict bodily injury on another, accompanied with the apparent present ability to do so, (2) intentionally creating in another person reasonable apprehension and fear of bodily injury, and (3) intentionally committing an unlawful touching, regardless whether physical harm results.

*Davis*, 60 Wn. App. at 821; *e.g.*, 11 Wash. Prac., *WPIC* § 35.50 (1977).

not essential elements of fourth degree assault. *Davis*, 60 Wn. App. at 821. Essentially, Davis's argument is that after the application of *Kjorsvik* and *Hopper*, a charging document need only use the name of the offense, assault, to validly charge fourth degree assault.

■ Davis cites no authority for his argument that the common law methods of committing assault are essential elements. Instead, he relies on cases such as *State v. Royse*, 66 Wn.2d 552, 557, 403 P.2d 838 (1965), where this court found that an information must "state the acts constituting the offense in ordinary and concise language, not the name of the offense". The information in this case does use ordinary and concise language, namely that "Davis . . . did assault Darlynn Ferguson." Supplemental Clerk's Papers, at 2. He was not charged with the name of the offense, "assault in the fourth degree". Davis was charged with assaulting his girlfriend, which he would understand due to the common meaning of assault. *See Hopper*, 118 Wn.2d at 158-59. We reject Davis's argument that the common law manners of committing assault are essential elements of fourth degree assault.

Therefore, we find that part of the information charging Davis with fourth degree assault to be constitutionally sufficient. Davis's conviction of fourth degree assault is affirmed.

### III

Davis also alleges he received ineffective assistance of counsel. The failure of Davis's counsel to object to the aggressor instruction did not amount to ineffective assistance of counsel.

■ A 2-part analysis is used to determine whether a defendant received ineffective assistance of counsel.

[f]irst, the defendant must show that counsel's performance was deficient . . . requir[ing] showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment [and,]

[s]econd, the defendant must show that the deficient performance prejudiced the defense . . . [by] showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). We adopted the *Strickland* test in *State v. Jeffries*, 105 Wn.2d 398, 418, 717 P.2d 722, *cert. denied*, 479 U.S. 922, 93 L. Ed. 2d 301, 107 S. Ct. 328 (1986); *see also State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).

Davis contends that counsel's failure to object to an aggressor instruction amounted to ineffective assistance of counsel. This is the only instance in the entire proceeding that Davis claims counsel did not provide effective representation. Under *Strickland* there is a *strong presumption* that counsel performed reasonably. *State v. Bowerman*, 115 Wn.2d 794, 808, 802 P.2d 116 (1990). There is no need to consider whether Davis received deficient representation because the instruction was properly presented to the jury and Davis was not prejudiced.

■ Generally, an instruction can be given to the jury if there is evidence to support the theory upon which the instruction is based. *State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986); *see also State v. Heath*, 35 Wn. App. 269, 666 P.2d 922 (finding that since there was conflicting evidence regarding whether defendant's conduct precipitated the fight the aggressor instruction was properly given), *review denied*, 100 Wn.2d 1031 (1983).[7]

■ Although there was conflicting evidence about what happened on August 1, 1988, evidence presented at trial

---

[7]*But cf. State v. Wasson*, 54 Wn. App. 156, 158-61, 772 P.2d 1039 (determining that there was not sufficient evidence to show that the defendant provoked a response from the victim), *review denied*, 113 Wn.2d 1014 (1989); *State v. Brower*, 43 Wn. App. 893, 901-02, 721 P.2d 12 (1986) (finding that there was not sufficient evidence to prove the defendant precipitated the incident against the victim).

supported the giving of an aggressor instruction. There was testimony that Davis was the first to strike the others during the first encounter on the landing. After that initial scuffle, Davis reemerged from his apartment with a knife behind his back. There was testimony that Davis pushed Gudmundson, and Locke then intervened, only to be stabbed by Davis. If true, those were "intentional act[s] reasonably likely to provoke a belligerent response". *State v. Wasson*, 54 Wn. App. 156, 159, 772 P.2d 1039, *review denied*, 113 Wn.2d 1014 (1989). All of this evidence supports the giving of an aggressor instruction. Because the instruction was properly given, Davis did not suffer prejudice when his attorney failed to object. Therefore, we reject Davis's ineffective assistance of counsel claim and affirm his conviction for second degree assault.[8]

Davis's claims that the information was not constitutionally sufficient and he received ineffective assistance of counsel are without merit. Therefore, we affirm his conviction.

DORE, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

Reconsideration denied January 19, 1993.

---

[8]Davis also contends that giving the aggressor instruction was an error of constitutional magnitude pursuant to RAP 2.5(a)(3). Aggressor instructions have been upheld in Washington courts when supported by the evidence. *See, e.g., State v. Hughes*, 106 Wn.2d 176, 191-93, 721 P.2d 902 (1986). Because we find that the instruction was supported by the evidence presented at trial, Davis's claim is without merit.