

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35268-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT A. TALLY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Robert Tally appeals his conviction for second degree assault,

arguing both instructional error and ineffective assistance of counsel. Because he has not

established that there was error, we affirm.

FACTS

Mr. Tally, a resident of Oregon at the time of this incident in 2015, attended a

custody hearing in the Spokane County Superior Court. At issue was the custody of his

two children by his former wife, Sara White. Ms. White had been married to Jamie

White since 2009. Mr. Tally was accompanied to the hearing by his girlfriend, Jean Matson. Mr. Tally, a victim of childhood abuse, had spent his youth in the Oregon foster care system. He had a long-standing diagnosis of posttraumatic stress disorder (PTSD).

Mr. White left the building to add money to his parking meter. Soon thereafter, Mr. Tally stepped outside the court building to smoke a cigarette. The two men came into contact and a confrontation ensued. Varying descriptions of the event were presented at trial.

Mr. White later testified that as he walked back towards the juvenile court building, Mr. Tally exited, and the men silently approached each other. Mr. Tally appeared confrontational; Mr. White said "I'm not doing this with you" as he passed, and the next thing he knew, he was regaining consciousness, bleeding from his ear and nose, with scrapes from the pavement on his face, hands, and knees. He was treated at Deaconess Hospital and diagnosed with a broken nose.

A witness described an "animated conversation" between the two men, noting that Mr. Tally "was doing most of the talking." The witness observed that Mr. White tried to walk away, but Mr. Tally delivered a "sucker punch" to Mr. White's head, and Mr. White "fell on the ground like a sack of potatoes and didn't move." Report of Proceedings (RP) at 152-153. Other witnesses similarly described seeing the two men approach each other and seeing Mr. Tally strike Mr. White.

Ms. Matson testified that she saw Mr. White with a key chain dangling from his hand as he approached Mr. Tally. Tally defensively pushed White away from him into the bay doors outside the juvenile building and turned to leave. Mr. White then grabbed Mr. Tally by the shoulder and raised his hand. Tally responded immediately by turning and defensively striking White in the face.

Mr. Tally testified that he went outside to smoke when he saw Mr. White coming from the vicinity of Tally's automobile. Fearing that something may have occurred, he walked toward White and told White not to mess with him. The two men made and maintained eye contact, with Tally noticing that something was dangling from White's hand. Tally told White not to do anything, but then he saw Mr. White's shoulder "flinch." Anticipating an attack, he stepped inside of White's path, grabbed him by the shirt, and threw him into the building. He then started walking to his car after telling White he should not have messed with him. White got up, went after Tally, and put his hand on Tally's shoulder. Tally punched White in the face and he fell into the curb. Tally then continued to his car and drove, over the objections of witnesses, back to Oregon.

The prosecutor filed a charge of second degree assault. Later, a charge of felony harassment was filed against Mr. Tally for allegedly threatening to shoot his former wife's attorney in the dependency action. The two charges were consolidated for jury trial.

3

In light of the assertion of self-defense, the prosecutor moved in limine to exclude mention of PTSD at trial. Mr. Tally replied in his pretrial motion brief:

> One of the defenses being presented is self-defense. . . . The defendant has a long-standing diagnosis of PTSD and anxiety, and has been granted an accommodation for a therapy animal during trial. The defendant is not offering a defense of diminished capacity or insanity, which would require expert testimony and certain disclosures to the State. . . . Because the jury must put itself in the mind of the defendant, . . . the jurors are allowed to hear testimony from the defendant as to his exact state of mind at the time of the assault. The defense is not asserting a lack of capacity to form criminal intent, rather, we are simply asserting the century-old staple of the law that the jury must evaluate a self-defense claim from the shoes of the defendant.

Clerk's Papers at 23-24. The trial court largely granted this motion, but did allow Tally to state and explain his feelings about the incident.

The defense offered instructions relating to the law of self-defense. The State proposed a "first aggressor" instruction in response. The court allowed the first aggressor instruction over defense objection. The court also instructed the jury on inferior degree offenses of third and fourth degree assault, and the included offense of nonfelony harassment.

The defense argued the assault charge on the basis of self-defense. The jury disagreed and convicted Mr. Tally of second degree assault as charged. The jury acquitted Mr. Tally of both harassment charges. The matter was set over for sentencing.

At defense request, the trial court granted Mr. Tally a mitigated exceptional sentence of 7 days in jail, with credit for 7 days served. The court found that the defendant's PTSD left him unable to conform to the requirements of the law. Mr. Tally then appealed from the conviction. The State did not cross appeal. A panel considered the matter without hearing argument.

## ANALYSIS

This appeal challenges the giving of the first aggressor instruction and trial counsel's alleged ineffectiveness in failing to pursue a diminished capacity defense. We address the arguments in the order listed.

*First Aggressor Instruction*

Mr. Tally argues that the court erred in giving the instruction. Since Mr. Tally admittedly was the first to engage in the physical altercation, the instruction was both necessary and proper. There was no error.

Self-defense is only available to respond to the *unlawful* use of force. *State v. Riley*, 137 Wn.2d 904, 911, 976 P.2d 624 (1999). Thus, one who provokes another to lawfully act in self-defense is not responding to unlawful force and has no right of self-defense. *Id*. at 909. Juries must often sort out which party, if any, was justified in using force and which was not. "Where there is credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense, an aggressor instruction is appropriate." *Id*. at 909-910. If the evidence is in conflict about who precipitated an

5

encounter, the instruction is appropriate. *State v. Davis*, 119 Wn.2d 657, 665-666, 835 P.2d 1039 (1992). Nonetheless, because an erroneous aggressor instruction effectively misstates the State's burden of proof, the error seldom will be harmless. *Riley*, 137 Wn.2d at 910 n.2; *State v. Stark*, 158 Wn. App. 952, 960-961, 244 P.3d 433 (2010).

Given that Mr. Tally began the altercation by throwing Mr. White into a building, the jury could certainly find that Tally created the need for White to respond; the subsequent tossing of White to the ground that broke White's nose was, in the defense view of the case, justified as self-defense. To make that determination, the jury needed to decide the propriety of Tally starting the fight in the first instance. Without having the aggressor instruction, it could not properly apply the law to the facts of this incident.

The trial judge correctly recognized that the instruction was appropriate. *Riley*, 137 Wn.2d at 909-910; *Davis*, 119 Wn.2d at 665-666. The court did not err by instructing the jury on the first aggressor doctrine.

*Ineffective Assistance of Counsel*

Mr. Tally also argues that his trial counsel erred in not pursuing a diminished capacity defense. The record simply does not support this claim.

Very well settled principles apply to this argument. An attorney must perform to the standards of the profession; failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts

6

must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, courts evaluate counsel's performance using a two-prong test that requires courts to determine whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id.* at 690-692. When a claim can be disposed of on one ground, a reviewing court need not consider both *Strickland* prongs. *Id.* at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

A diminished capacity defense is appropriate "whenever there is substantial evidence of such a condition and such evidence logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged." *State v. Griffin*, 100 Wn.2d 417, 419, 670 P.2d 265 (1983). A defendant is entitled to a diminished capacity instruction if (1) the crime charged includes a particular mental state as an element, (2) the defendant presents evidence of a mental disorder, and (3) expert testimony logically and reasonably connects the defendant's alleged mental condition with the asserted inability to form the mental state required for the crime charged. *State v. Atsbeha*, 142 Wn.2d 904, 914, 921, 16 P.3d 626 (2001). The testimony of an expert witness is necessary to present a diminished capacity defense. *State v. Stumpf*, 64 Wn. App. 522, 526, 827 P.2d 294 (1992).

Mr. Tally faults his trial attorney for not pursuing a diminished capacity defense. This argument is curious for a couple of reasons. Primarily, it fails because the record does not establish any basis for instructing on diminished capacity. There was no expert testimony indicating that Mr. Tally suffered from a mental disease or defect that prevented him from forming the mental state—intent—necessary to commit assault. Even though the record suggested that Mr. Tally suffered from PTSD, that fact itself simply is insufficient to establish diminished capacity. There also needed to be expert testimony linking that condition to an inability to intend his actions. Since that evidence was lacking, there was no basis for instructing on diminished capacity and counsel could not have erred.

The argument also is curious because it flies directly in the face of the defendant's own testimony that he acted as he did because he needed to protect himself. During the fight he demonstrated that he acted intentionally; he further backed that position up in his testimony. He perceived a threat from Mr. White and purposefully acted to protect himself. Mr. Tally's testimony simply did not support a diminished capacity defense.

Because Mr. Tally has not demonstrated that his counsel erred in pursuing self-defense over a diminished capacity theory, his claim of ineffective assistance necessarily fails. We therefore need not address whether he demonstrated prejudice. *Strickland*, 466 U.S. at 697.

No. 35268-4-III
*State v. Tally*

The conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, C.J.