IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35472-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRENTEN MICHAEL MULROY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — In 2007, Brenten Mulroy pled guilty to third degree assault, unlawful imprisonment, and two counts of witness tampering, three of which charges included domestic violence allegations. On appeal, Mulroy challenges one or more convictions because of the State's failure to plead the facts that supported the domestic violence allegations. He also challenges portions of his sentence.

FACTS

Since Brenten Mulroy pled guilty to charged crimes without a trial, we take our facts from a police report. On January 10, 2007, Brenten Mulroy and Jacqueline Sanger,

a dating couple, stayed overnight at the residence of Ashlie Brown and Michael Taylor. At 5:00 a.m. on January 11, Mulroy awoke Sanger because he desired sexual intercourse. Sanger informed Mulroy that she did not wish to engage in intercourse. An angry Mulroy left the bedroom.

Brenten Mulroy soon returned to the bedroom and confronted Jacqueline Sanger. Mulroy jumped on Sanger, sat on her waist, and pinned her to the bed. Mulroy punched Sanger's stomach and slapped her face. Sanger struggled to free herself and yelled for help. Mulroy placed both hands around Sanger's neck and squeezed. Mulroy suddenly got off Sanger and declared: "'I'm sorry.'" Clerk's Papers (CP) at 1.

Jacqueline Sanger ran to Ashlie Brown's bedroom as a sorrowful Brenten Mulroy threatened to hurt Sanger again if she contacted police. Mulroy attempted to stop Sanger and Brown from leaving the house. As the two left the residence, Mulroy broke Sanger's cell phone and warned that he would harm the two if either called law enforcement.

Ashlie Brown drove Jacqueline Sanger to Valley Hospital's emergency room in Spokane Valley. Brenten Mulroy admitted to Michael Taylor that he forcefully struck Sanger in the face. Taylor saw that Mulroy's fingers had blood near rings on the fingers.

PROCEDURE

The State of Washington charged Brenten Mulroy by amended information with third degree assault, unlawful imprisonment, and two counts of witness tampering. One count of witness tampering related to Mulroy's threats to Jacqueline Sanger while the

other count of witness tampering related to Mulroy's threats to Ashlie Brown.  The charging information included the notation "DV," for domestic violence near the listing of the counts of third-degree assault and unlawful imprisonment and the count of tampering with witness Sanger constituted domestic violence.

On March 28, 2007, Brenten Mulroy entered a plea of guilty to all four charges. The guilty plea statement informed Brenten Mulroy that, because of a conviction for domestic violence, the court could order him to pay a domestic violence assessment of up to $100.  The trial court accepted Mulroy's guilty plea.

Based on an offender score of nine, Brenten Mulroy's standard range for all four offenses was fifty-one to sixty months, with an additional nine to eighteen months of community custody.  The maximum sentence for each count was five years.  As part of a plea bargain, the State recommended a prison-based drug offender sentencing alternative (DOSA) sentence of 27.75 months in custody and 27.75 months on community custody.

The sentencing court followed the State's recommendation and imposed a prison-based DOSA sentence.  The judgment and sentence, however, read that, if the Department of Corrections terminated Mulroy from the DOSA program, the court could require Mulroy to serve the remaining balance of his sentence as well as an additional nine to eighteen months of community custody following his release.  The trial court found that Brenten Mulroy's offenses were domestic violence offenses and imposed a $100 domestic violence assessment in total.

LAW AND ANALYSIS

On appeal, Brenten Mulroy challenges the sufficiency of the charging information and a portion of his sentence. Based on *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), Mulroy also asks that we vacate a legal financial obligation.

Charging Information

On appeal, Brenten Mulroy contends that the charging information was deficient. He claims that the domestic violence allegation must be placed in the information particularly since the allegation could increase the monetary penalty. He relies on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

A deficient information raises a point of constitutional magnitude that we may review for the first time on appeal. *State v. Davis*, 60 Wn. App. 813, 816, 808 P.2d 167 (1991), *aff'd*, 119 Wn.2d 657, 835 P.2d 1039 (1992). We review challenges to the sufficiency of a charging document de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007).

The State must include all essential elements of a crime, statutory or otherwise, in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him or her. *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). This rule helps ensure that defendants can adequately prepare a defense. *State v. Kjorsvik*, 117 Wn.2d at 101.

Brenten Mulroy emphasizes that Washington law fails to recognize the increased punishment applied to a domestic violence finding, and, in turn, ignores the reasoning of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004). Mulroy notes that the domestic violence finding can lead to a $100 assessment.

*Apprendi v. New Jersey* and *Blakely v. Washington* hold that any factor that increases the penalty for a crime beyond the prescribed statutory maximum must be proved beyond a reasonable doubt and found to exist by a jury. The decisions mention nothing about pleading requirements.

The Washington State Legislature designed the domestic violence act, chapter 10.99 RCW, to "recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse." RCW 10.99.010. The legislature sought to correct "policies and practices of law enforcement agencies and prosecutors which have resulted in differing treatment of crimes occurring between cohabitants and of the same crimes occurring between strangers." RCW 10.99.010. Among other things, the legislature required that courts "identify by any reasonable means on docket sheets those criminal actions arising from acts of domestic violence." RCW 10.99.040(1)(d). The act directs the sentencing court to enter a pretrial no-contact order and to grant such prosecutions priority in scheduling. RCW 10.99.040(2).

This court consistently holds that a domestic violence designation does not alter the elements of the underlying offense. *State v. Hagler*, 150 Wn. App. 196, 201-02, 208 P.3d 32 (2009); *State v. O.P.*, 103 Wn. App. 889, 892, 13 P.3d 1111 (2000). The designation instead signals the court to equitably and vigorously enforce the law. The designation need not be proved to a jury under *Blakely*. *State v. Hagler*, 150 Wn. App. at 202; *State v. Winston*, 135 Wn. App. 400, 406-10, 144 P.3d 363 (2006). Since the allegation of domestic violence does not constitute an element of the crime, we reject Brenten Mulroy's contention that the allegation must be pled. We reaffirm this court's holding in *State v. Goodman*, 108 Wn. App. 355, 30 P.3d 516 (2001) that the information need not include the alleged element of domestic violence.

We note that the original information and the amended information against Brenten Mulroy placed the notation "DV" on the face of the document next to three of the four crimes. Mulroy recognizes the notation, but argues the State needed to add, in the charging information, the underlying facts that constituted domestic violence. Because domestic violence need not be pled, we disagree.

Sentence

Brenten Mulroy asks that we remand for inclusion of a *Brooks* notation on his judgment and sentence. He proclaims the necessity of the notation because his aggregate term of imprisonment and community custody could exceed the statutory maximum for his crimes. The term "*Brooks* notation" arises from case law wherein the Washington

6

Supreme Court held that, when a defendant is sentenced to a "term of confinement and community custody that has the *potential* to exceed the statutory maximum for the crime, the appropriate remedy is to remand to the trial court to amend the sentence and explicitly state that the combination of confinement and community custody shall not exceed the statutory maximum." *In re Personal Restraint of Brooks*, 166 Wn.2d 664, 675, 211 P.3d 1023 (2009) (emphasis added).

The statutory maximum penalty respectively for the crimes of third degree assault, unlawful imprisonment, and witness tampering is five years. RCW 9A.36.031(2); RCW 9A.40.040(2); RCW 9A.72.120(2). The sentencing court may not impose a sentence of imprisonment or community custody that exceeds the statutory maximum for the crime. RCW 9.94A.505(5). Brenten Mulroy's judgment and sentence reads that, if the Department of Corrections terminates Mulroy from the DOSA program, the court could require Mulroy to serve the remaining balance of his sentence as well as an additional nine to eighteen months of community custody following his release. Thus, community custody and prison time could exceed sixty months, or five years.

Pursuant to *State v. Franklin*, 172 Wn.2d 831, 263 P.3d 585 (2011), the State argues remand for a *Brooks* notation is not necessary because the trial court sentenced Brenten Mulroy before the 2009 amendments to the Sentencing Reform Act of 1981 (SRA) chapter 9.94A RCW. We disagree.

In *State v. Franklin*, the judgment and sentence contained the required *Brooks*

7

notation because the court sentenced the defendant to a variable term of community custody. Yet, John Franklin argued that *Personal Restraint of Brooks* no longer controlled in light of the 2009 SRA amendments and that the amendments entitled him to resentencing. The State argued *Brooks* still controls. The State Supreme Court took review solely to consider whether the trial court needed to reduce Franklin's terms of community custody to bring the sentence within the statutory maximum. The court framed the issue: "[w]hether the amendments to RCW 9.94A.701 apply retroactively to Franklin and, if so, whether Franklin must be resentenced accordingly or, alternatively, whether [Department of Corrections] has the authority to reduce the term of community custody by recalculating its termination date." *State v. Franklin*, 172 Wn.2d at 839.

The *Franklin* court noted that RCW 9.94A.701(9) includes an express retroactivity provision. The court then considered how to retroactively apply the changes to John Franklin's sentence. Franklin argued the new statute required the trial court to reopen sentencing proceedings and retroactively reduce a previously imposed term of community custody. The court disagreed and ruled that the legislature had charged the Department of Corrections, not the sentencing court, with bringing pre-amendment sentences in compliance with the SRA amendments. Therefore, resentencing was unnecessary. The court wrote:

> Specifically, section 9 requires the [Department of Corrections] to recalculate the terms of community custody in accordance with the fixed terms established in RCW 9.94A.701(1)-(3) for all offenders who were

8

> sentenced prior to the 2009 amendments.  Under the new scheme, Franklin
> is subject to fixed terms of 12 months of community custody for both
> counts I and III.  *In addition, Franklin's total sentence is still subject to the*
> *Brooks notation in his original sentence*.

*State v. Franklin*, 172 Wn.2d at 841 (emphasis added) (footnote omitted).

In Brenten Mulroy's appeal, the State asserts that the *Brooks* notation is only

required in those cases when the period of custody and community supervision facially

exceed the statutory maximum for the crime.  Again, we disagree.  The *Brooks* court

explicitly stated that, when a defendant is sentenced to a "term of confinement and

community custody that has the *potential* to exceed the statutory maximum for the crime,

the appropriate remedy is to remand to the trial court to amend the sentence and explicitly

state that the combination of confinement and community custody shall not exceed the

statutory maximum." *In re Personal Restraint of Brooks*, 166 Wn.2d at 675 (emphasis

added).

The State also asserts that RCW 9.94A.701(9) does not apply to Brenten Mulroy's

sentencing because the trial court sentenced Mulroy in 2007, two years before the

Sentencing Reform Act amendments.  Again, we disagree.  *State v. Franklin*, which the

State otherwise uses as support, held that RCW 9.94A.701(9) applies retroactively due to

its express retroactivity provision.

In line with *Brooks* and *Franklin*, resentencing is not necessary.  Nevertheless, we

remand so the trial court can amend Brenten Mulroy's judgment and sentence to include

the *Brooks* notation such that the combined term of confinement and community custody shall not exceed the statutory maximum. Mulroy need not appear for a hearing to enter the amendment.

Legal Financial Obligations

By motion filed after submitting his appeal briefs, Brenten Mulroy asks this court to reverse the trial court's imposition of $200 in court costs, which likely represents the criminal filing fee. Mulroy's argument relates to the recent amendments to many of the legal financial obligation statutes by House Bill 1783 and a recent decision by our Supreme Court. House Bill 1783 became effective June 7, 2018, and the Washington Supreme Court decided *State v. Ramirez*, 191 Wn.2d 732 (2018) on September 20, 2018. Due to the timing of House Bill 1783 and *Ramirez*, Mulroy could not raise this issue in his opening brief.

Due to House Bill 1783, the criminal filing fee is no longer a mandatory legal financial obligation. The legislature proscribed courts from imposing the fee on indigent defendants. LAWS OF 2018, ch. 269 §, 17. Because Ramirez's case was still pending on review, and not final when the amendments were enacted, our Supreme Court held that Ramirez was entitled to the benefit of the amendments. The court stated:

> Ramirez's case was on appeal as a matter of right and thus was not yet final under RAP 12.7 when House Bill 1783 became effective. Because House Bill 1783's amendments pertain to costs imposed upon conviction and Ramirez's case was not yet final when the amendments were enacted, Ramirez is entitled to benefit from this statutory change.

No. 35472-5-III
*State v. Mulroy*

*State v. Ramirez*, 191 Wn.2d at 749.

Brenten Mulroy's case was still pending on direct review when the legislature enacted House Bill 1783. Thus, following the Supreme Court's dictate, he is entitled to the benefits of the statutory changes. Mulroy was found indigent for purposes of appeal and would likely be found indigent based on the information provided in his report as to continued indigency. Therefore, we also remand to order the trial court to strike the $200 in costs from the judgment and sentence. Mulroy need not appear for a hearing to strike the costs.

CONCLUSION

We affirm all of Brenten Mulroy's convictions. We remand for the sentencing court to include a *Brooks* notation in the judgment and sentence and for the sentencing court to strike $200 in costs from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J. — In result only

_____
Lawrence-Berrey, C.J.

11