IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36038-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KAZ A J MCKENZIE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Kaz McKenzie appeals from a conviction for second degree assault, arguing that judicial and prosecutorial errors deprived him of a fair trial. We affirm.

## FACTS

Mr. McKenzie and Wayne Foss resided in the same apartment building. The two men had prior confrontations due to McKenzie's belief that Foss wanted to steal his dog. On December 4, 2017, Foss sat outside his apartment taking off his shoes when McKenzie approached and repeatedly punched him. McKenzie then started to strangle Foss, purportedly out of fear that Foss might use the knife he regularly carried to defend himself. Witnesses included Mr. McKenzie's brother and an assistant manager, Amber Lawsha, who were both called to the scene shortly before the confrontation. Mr. Foss's cousin also observed the altercation.

Police responded to the building and contacted Mr. McKenzie at his apartment. While officers stood in the hallway, Mr. McKenzie stepped out and fully admitted he started the fight and choked Mr. Foss. McKenzie was charged with second degree assault by strangulation. After a CrR 3.5 hearing, the trial court ruled that McKenzie's statements to law enforcement at the apartment were admissible.

Mr. McKenzie testified at his jury trial that he started the fight to protect his dogs. One of his proposed witnesses was another apartment building manager, Patrick Kinchler, who would testify that Foss habitually carried a large "Bowie" knife. The trial court excluded Kinchler's testimony because he did not see Foss on the date of the offense and others testified Mr. Foss regularly carried a knife. Mr. McKenzie also called manager Amber Lawsha as a defense witness. She claimed that she received a phone call from an individual about a situation at the apartment, which was contradicted by Mr. McKenzie's brother's testimony that he and Ms. Lawsha were called by Mr. McKenzie to his apartment just before the fight. The prosecutor aggressively cross-examined Ms. Lawsha and questioned her truthfulness during closing. The trial court cautioned the prosecutor during cross-examination and sustained an objection to the prosecutor's commentary concerning Lawsha in closing.

At the State's request, the trial court gave a first aggressor jury instruction. The jury convicted Mr. McKenzie of second degree assault. After the court imposed a

standard range sentence, Mr. McKenzie timely appealed to this court. A panel heard oral argument of his appeal.

ANALYSIS

This appeal presents five issues, which we address in the following order: (1) *Miranda* violation, (2) exclusion of a defense witness, (3) prosecutorial misconduct, (4) first aggressor instruction, and (5) legal financial obligations.

*Miranda*

Mr. McKenzie first argues that his statements to law enforcement were improperly admitted at trial because he believed he was not free to leave during questioning. However, the undisputed facts establish that his statements were not made during custodial interrogation.

Appellate courts treat uncontested findings of fact from a CrR 3.5 hearing as verities on appeal and, if challenged, examine whether the findings of fact are supported by substantial evidence. *State v. Broadaway*, 133 Wn.2d 118, 134, 942 P.2d 363 (1997). Substantial evidence exists if the evidence is sufficient to persuade a fair-minded rational person of the truth of the evidence. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Whether the findings of fact support the trial court's legal conclusions is a question of law reviewed de novo. *State v. Lorenz*, 152 Wn.2d 22, 30, 93 P.3d 133 (2004).

Prior to conducting a custodial interrogation, an officer must first advise the suspect of his rights regarding the interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444,

86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). A suspect is in custody for purposes of *Miranda* when a reasonable person would believe his freedom of action is curtailed to the degree associated with a formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984).[1] The test is an objective one. *Id.* A person is not in "custody" merely because he has been "seized." A seizure exists when, under the totality of the circumstances, "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *see also Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). While contact initiated voluntarily with law enforcement at one's home is less likely custodial, the circumstances could create a custodial environment where officers control the individual's movement and engage in interrogational questioning. *State v. Rosas-Miranda*, 176 Wn. App. 773, 781, 309 P.3d 728 (2013).

Mr. McKenzie was in his apartment when police asked him about his encounter with Mr. Foss. He spoke with police at the door of his apartment. Later, Mr. McKenzie testified at the CrR 3.5 hearing that he did not feel free to leave. His subjective opinion of the encounter does not control. Here, the evidence only showed a consensual encounter and conversation. There was no seizure, let alone custodial interrogation.

---

[1] In *Berkemer*, the court concluded that routine roadside seizure and questioning following a traffic stop did not amount to custodial interrogation. 468 U.S. at 440.

There were no indicia of custody and no indication that Mr. McKenzie was ever restrained to the degree associated with formal arrest. The trial court correctly concluded that this was not a custodial interrogation.

*Exclusion of Defense Witness*

Mr. McKenzie next argues that the court prevented him from presenting his defense when it excluded one of his proposed witnesses. Because he had no right to present the proposed testimony, the trial court did not abuse its discretion by excluding the witness.

Appellate review of trial court evidentiary decisions is governed by well settled law. The decision to admit or exclude evidence is reviewed for abuse of discretion. *State v. Clark*, 187 Wn.2d 641, 648-649, 389 P.3d 462 (2017); *State v. Guloy*, 104 Wn.2d 412, 429-430, 705 P.2d 1182 (1985). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Under both the Sixth Amendment to the United States Constitution and art. I, § 22 of the Washington Constitution, a defendant is entitled to present evidence in support of his defense. *State v. Strizheus*, 163 Wn. App. 820, 829-830, 262 P.3d 100 (2011). That right, however, does not include a right to present irrelevant or inadmissible evidence. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010); *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). As the proponent of the evidence, the defendant bears the

burden of establishing relevance and materiality. *State v. Pacheco*, 107 Wn.2d 59, 67, 726 P.2d 981 (1986).

Kinchler's testimony was excluded as cumulative. Witnesses for the prosecution and defense both testified that Mr. Foss habitually carried a knife, and varied only as to whether he was in possession of the Bowie knife at the time he was attacked. The trial court ascertained Mr. Kinchler did not see Mr. Foss on December 4 and could not testify about what knife, if any, Mr. Foss carried that day. In light of the trial testimony, Kinchler's proposed testimony was at most cumulative and was not at all relevant to the true issue in the trial. The court had very tenable reasons for excluding the testimony.

Mr. McKenzie fails to show how his right to present a defense was violated under these circumstances. He was allowed to present his theory that Foss habitually wore a Bowie knife. All of the other witnesses testified to the one piece of relevant information Kinchler had, and he had no information bearing on the question of how Foss was armed at the time of the crime. The proposed testimony was either cumulative or irrelevant, and in either instance was properly excluded.

There was no error.

*Prosecutorial Misconduct*

Mr. McKenzie next argues that misconduct by the prosecutor deprived him of a fair trial. Although he has established some error, he has not shown that he was denied a fair trial.

6

The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Prejudice occurs where there is a substantial likelihood that the misconduct led the jury to decide the case on improper grounds. *In re Glasmann*, 175 Wn.2d 696, 710-711, 286 P.3d 673 (2012). We look to the cumulative impact of all errors to determine if the defendant was deprived of a fair trial. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Reversal is not required where an objection and curative instruction would have addressed the error. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). Failure to object waives misconduct claims unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610 (1990). Finally, a prosecutor has "wide latitude" in arguing inferences from the evidence presented. *Stenson*, 132 Wn.2d at 727.

A prosecutor cannot comment on a witness's credibility or truthfulness. *State v. Ish*, 170 Wn.2d 189, 196, 241 P.3d 389 (2010). During closing, a prosecutor also cannot present evidence not admitted at trial or attempt to inflame the jury's passion to convict the defendant. *Glassman*, 175 Wn.2d at 705, 707. Misconduct that addressed insignificant or inconsequential evidence, such as questioning the truthfulness of a secondary witness, is less likely to have prejudicial impact. *Ish*, 170 Wn.2d at 199-200.

7

While Mr. McKenzie brings up five separate allegations of misconduct from the State's closing argument, he only objected to two instances during trial. The State correctly conceded that the prosecutor improperly suggested Ms. Lawsha lied. However, we note the trial court sustained an objection to this statement and admonished the prosecutor. Mr. McKenzie did not argue at trial the admonishment was insufficient and, on appeal, does not suggest how the prosecutor's misconduct impacted the verdict. The dispute over Ms. Lawsha's testimony gave the incident some context, but she was not a key witness where questioning her truthfulness may have changed the case outcome. While improper, this misconduct was harmless.

Mr. McKenzie also argues the prosecutor gave an incorrect statement on self-defense standards when stating self-defense requires a degree of immediacy. Defense counsel quickly objected. The trial court noted to the jury this was purely argument and the jury was to follow the court's instruction. Mr. McKenzie has not established that the court's instruction was an inadequate remedy.

For the first time on appeal, Mr. McKenzie challenges three statements from the prosecutor's closing argument. None of his challenges are meritorious and certainly none of the statements were so flagrant and ill-intentioned that the trial judge could not have cured the error. The prosecutor's comparison between Mr. McKenzie's actions and vigilantism was proper argument and also was not particularly inflammatory. Similarly, the prosecutor's suggestion that Mr. McKenzie had arranged the fight was drawn from

8

reasonable inferences based on the testimony of McKenzie's brother. Finally, Mr. McKenzie argues the prosecutor inappropriately referenced his military service. The prosecutor's statement was part of a story about removing shoes when he and his wife were "in the service" in Hawaii. This passing statement was not an appeal to patriotism or authority. None of these instances individually or as a whole were improper or sufficiently inflammatory to require a new trial.

In summary, there was only one instance of misconduct. In light of the entire case, the misconduct was harmless as there was no evidence it impacted the jury's verdict.

*First Aggressor Instruction*

Mr. McKenzie also argues that the court erred in giving the first aggressor instruction. Once again, there was no abuse of the court's discretion.

We review whether evidence supported a jury instruction in the light most favorable to the requesting party. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-456, 6 P.3d 1150 (2000). Self-defense is only available to respond to the *unlawful* use of force. *State v. Riley*, 137 Wn.2d 904, 911, 976 P.2d 624 (1999). Thus, one who provokes another to lawfully act in self-defense is not responding to unlawful force and has no right of self-defense. *Id.* at 909. Juries must often sort out which party, if any, was justified in using force. "Where there is credible evidence from which a jury can reasonably determine that the defendant provoked the need to act in self-defense, an

9

aggressor instruction is appropriate." *Id.* at 909-910. If the evidence is in conflict about who precipitated an encounter, the instruction is appropriate. *State v. Davis*, 119 Wn.2d 657, 665-666, 835 P.2d 1039 (1992).

There was credible evidence that the defendant provoked his alleged need to act in self-defense. He attacked first and then escalated his assault due to his fear that the victim would defend himself with a weapon. Viewing the evidence in a light most favorable to the State, the first aggressor instruction was necessary to inform the jury that Mr. McKenzie could not properly claim self-defense under the circumstances. *Riley*, 137 Wn.2d at 909-910.

Nonetheless, Mr. McKenzie argues that the instruction served to undercut his defense and, thus, should not have been given. His argument is not a basis to deny the State a proper instruction, but, instead, addresses the impact an improper aggressor instruction could have on a particular case. Accordingly, we need not address this argument, but we take time to note that this was also an instance where an erroneous first aggressor instruction would have constituted harmless error. One of the few instances where a first aggressor instruction is harmless error is when no reasonable jury could find the defendant acted in lawful self-defense. *State v. Kidd*, 57 Wn. App. 95, 101, 786 P.2d 847 (1990). That is the situation here.

Mr. McKenzie sought the instruction on the basis of his claimed need to protect a dog that was safely in his apartment from potential theft. However, he presented no

evidence that Foss was in the process of stealing his dog when the attack was launched,

nor has he explained how punching Foss to prevent theft constituted a defense to the

charge of second degree assault based on the ensuing strangulation.[2] Instructing the jury

on self-defense was a very charitable act for the trial court. Errors relating to self-defense

were harmless in this case.

The court did not err in giving the first aggressor instruction.

*Financial Obligations*

Lastly, Mr. McKenzie argues that the court erred in assessing the criminal filing fee

and the DNA collection fee. In light of recent changes in Washington law and the absence of

opposing argument from the State, we strike the $200 criminal filing fee and $100 DNA fee.

Affirmed and remanded to strike the noted fees.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Pennell, A.C.J.

_____
Siddoway, J.

---

[2] He likewise has not presented authority suggesting that lethal force can be used to prevent theft.